**COMMONWEALTH of Kentucky, DEPARTMENT OF HIGHWAYS, Appellant,**

v.

**Daniel D. BALL et al., Appellees.**

Court of Appeals of Kentucky.

Nov. 10, 1967.

Robert Matthews, Atty. Gen., H. C. Smith, Asst. Atty. Gen., Frankfort, Edmond H. Tackett, Pikeville, for appellant.

Eldred E. Adams, Daniel D. Ball, Louisa, for appellees.

CLAY, Commissioner.

In this condemnation proceeding the jury awarded appellees $20,000 for the taking of something over three acres from a 30-acre tract located on U.S. 23 about a mile south of Louisa. The Commonwealth contends certain evidence was incompetent and the verdict was excessive.

Appellees' property was hillside land, fronting about one-half mile on the highway, and sloping rather steeply to the top of a ridge. It was used as a pasture at the time of the taking, with no improvements except a barn (not taken). The Commonwealth took a strip across the frontage 93 feet in depth at its widest point and tapering to 24 feet.

This land was purchased in 1958 for $7,000. The jury found its before value to be $36,000 and its after value to be $16,000, thus the award of $20,000.

Appellant objected to the introduction of a color photograph which was taken after construction had started on the condemned property. We have in certain cases held such evidence incompetent where the picture portrays an abnormal condition the jury would likely and improperly consider in awarding damages. See Commonwealth, Dept. of Highways v. Fister, Ky., 373 S.W.2d 720, and Commonwealth, Dept. of Highways v. Quisenberry, Ky., 402 S.W. 2d 427, 428.

While the picture in controversy shows some grading work had been started, it fairly represents the contour of the land, a matter of most importance in this case. It has been very helpful to us. It exhibits nothing the jury should not have properly considered. It was admissible.

Appellees' expert witnesses testified the land had value for building lots. On direct examination they simply stated before and after values without elaboration. On cross-examination it developed that one of the witnesses had made a speculative division of the frontage into 29 building lots, 100 x 200 feet, and after placing a value (up to $2,000) on each lot, had added his lot figures in reaching his before value estimate. Another witness had used a similar method, and after totaling the projected value of the lots, had subtracted this figure from his before value figure and thereby reached his after value appraisal.

Valuation evidence of this kind was condemned in Commonwealth, Dept. of Highways v. Evans, Ky., 361 S.W.2d 766, and United Fuel Gas Company v. Clarke, Ky., 387 S.W.2d 844, because it does not fairly represent the market value of the unimproved tract *as a whole*.

Of course the adaptability of the land for such use could be shown, and its overall value based on such utilization is a significant factor. However, in this case, even if the witnesses had not projected specific individual lot values, their method of appraisal lacked probative value. In the first place, it rests on the false assumption that the Commonwealth is condemning a strip 200 feet wide, which it is not. Secondly, it assumes the Commonwealth is taking all of the landowners' frontage, when in fact the remaining land has an almost identical frontage area. Finally, it completely ignores the fact that the land remaining after the taking has substantially the same potential building lot value as it had before the taking.

The effect of the taking in this case was to widen a highway without appreciably

changing the grade. Appellees' potential building lots were simply moved back a distance of 24 to 93 feet. Since they were wholly imaginary to begin with, this shift of location did no direct physical damage.

What we have just said of course would not be true if appellees' outer property line limited the usable depth of the newly projected frontage lots. (It did not.) Also, if the steepness of the slope increases as the land recedes from the highway (which to a certain degree is a topographical fact in this case), the remaining area would have a lesser building lot value. However, the landowners' own evidence makes it clear that if the land before the taking had a building lot value, the remaining land must likewise have such a value. The damage appraisal method used by appellees' witnesses clearly distorted the picture by overemphasis upon lots taken without giving due regard to lots left. *Other things being equal,* when the remaining tract is converted to frontage, it should be valued on the same basis the original frontage was valued.

We do not intimate that the land remaining after the taking in the present case had precisely the same adaptability as that of the land condemned. However, its building lot potential was completely ignored by appellees' witnesses. The measure of damage is the difference between the value of the whole tract before the taking and the value of the whole tract remaining after the taking. If frontage is a significant value factor before, it is a significant factor after, if length, depth and adaptability are substantially the same.

The opinion evidence based upon aggregated fictitious individual lot values was incompetent and should have been stricken. Its consideration by the jury resulted in a verdict which exceeds the bounds of just compensation.

The judgment is reversed for a new trial.

WILLIAMS, C. J., and HILL, MILLIKEN, MONTGOMERY, PALMORE and STEINFELD, JJ., concur.

OSBORNE, J., not sitting.